IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORA BUSSE,<br><br>　　　　　Plaintiff,<br>　v.<br>SHAKLEE CORPORATION, *et al.*,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C 10-359 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

On March 26, 2010, the Court held a hearing on plaintiff's motion for remand and defendants' motions to dismiss. For the reasons set forth below, the Court DENIES plaintiff's motion for remand, GRANTS defendants' motions to dismiss, and GRANTS plaintiff leave to amend.

**BACKGROUND**

Plaintiff Debora Busse was employed by Shaklee Corporation from February 1, 1983 through August 3, 2007, last working as Vice-President of Finance and Corporate Controller. The defendants are Shaklee Corporation, Shaklee's CEO Roger Barnett, the in-house counsel for Shaklee, Marjorie Fine, and the outside attorneys for Shaklee at Orrick, Herrington & Sutcliffe LLP, William Berry and D. Barclay Edmundson, and Orrick Herrington.

The complaint alleges that Shaklee sponsored two employee benefits plans, the Shaklee Corporation Pension Plan and the Shaklee Corporation Excess Plan. Compl. ¶ 7. Both plans are "employee pension benefit plans" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). Plaintiff alleges that in 2005, Shaklee awarded her a "performance" bonus, which under the terms of the plans would entitle plaintiff to receive additional benefits based on

her compensation. *Id*. ¶¶ 7-8. The complaint alleges that in January 2007, defendant Barnett decided to recharacterize the performance bonus paid to plaintiff and four other top level employees as a "retention bonus" to avoid the liability for Shaklee to fund the additional pension benefits. *Id*. ¶¶ 15-17. According to the complaint, defendants Berry and Fine instructed the Plan Administrator for the Plans, Prudential Retirement, to change their records to change the classification of the bonuses from "performance" bonuses to "retention" bonuses. "Through plaintiff's professional contacts at Prudential Retirement, BUSSE learned that Prudential Retirement representatives questioned the re-classification of performance bonuses to 'retention bonuses.' Plaintiff also learned that defendant WILLIAM BERRY had falsely represented to employees at Prudential that SHAKLEE CORPORATION had written to substantiate that the bonuses paid in July 2005 were in fact 'retention bonuses' and therefore not eligible to be counted towards pension earnings." *Id*. ¶ 19. As a result of Berry and Fine's intentional misrepresentations, Prudential Retirement changed the classification of plaintiff's bonus, and plaintiff was not provided her full pension distribution from the Excess Plan. *Id*. ¶¶ 20-21, 35. The complaint alleges that when plaintiff retired in September 2007, she obtained her pension payout from the Excess Plan, less approximately $148,000 she would have been paid if her performance bonus been taken into account.

Plaintiff repeatedly complained to Barnett and Fine about the recharacterization of her bonus. The complaint alleges that the day before plaintiff retired, Fine threatened plaintiff that if she attempted to pursue the matter through legal channels, that defendant Barnett would "bury [her] in legal fees." *Id*. ¶ 23. In August 2008, plaintiff demanded in writing that Shaklee retract the mischaracterization of her 2005 bonus as a retention bonus. Defendant Berry, acting on behalf of Shaklee, insisted that plaintiff's claim be treated as a claim for additional pension benefits, denied the claim, and insisted that plaintiff pursue the claim through an administrative appeal to The Plans Appeals Committee before instituting any litigation. *Id*.

In the ERISA administrative appeal, plaintiff submitted sworn affidavits from a number of Shaklee employees in support of her claim that the 2005 bonus was a performance bonus. "[A]fter each subsequent sworn affidavit, the plaintiff demanded that the pension benefits associated with the July 2005 bonus be paid, yet the defendants refused to honor the plaintiff's claim for pension benefits under

2

the Plan speciously claiming that they were justified in obtaining an Appeals Committee's ruling of July 23, 2009, since they claimed that whether a bonus is a retention bonus or performance bonus just depends on whatever the corporation wants to call it." *Id.* ¶ 28. Plaintiff alleges that during the appeals process, defendants "threatened a scam counter lawsuit of their own claiming that the plaintiff was giving financial advice to fellow employees as to what was in their best interest after the Defendant, Shaklee Corporation, announced in January 2007 that effective May 27, 2007, the Plans would be frozen, and all future earnings would be excluded from pension benefits, thus saving the Corporation from any liability to new pension benefits. Defendants had absolutely no basis to bring any lawsuit against the plaintiff but threatened an expensive counter-suit if the plaintiff continued with her potential lawsuit." *Id.* ¶ 32. Although plaintiff, through her attorney, "plead with the defendants to demonstrate good faith and permit them to read affidavits that would either state the defendant's case or refute the plaintiff's case, at no time did the defendants ever present any case whatsoever but merely defended by threatening a sham counter suit that would cost the plaintiff a fortune to defend." *Id.* ¶ 33.

On July 23, 2009, the Appeals Committee upheld plaintiff's claim that the bonus was a "performance" bonus, and plaintiff received the pension benefits she was due. *Id.* ¶ 29.

The complaint alleges that "as a result of the failure to allow The Plans to fulfill their contract obligation with the plaintiff," plaintiff had to pay $50,588.00 "for legal representation and related expenses." *Id.* ¶ 34. Plaintiff also alleges that as a result of not being able to receive the full lump-sum pension payment from the Excess Pension Plan at the time it was originally due, plaintiff lost $6,621.60 in social security (FICA) tax that she would not have had to pay if defendants had paid the full pension benefit in 2007. *Id.* ¶ 35.

Plaintiff alleges that prior to the filing of the administrative appeal, she believed that she had both a close friendship and professional relationship with defendant Fine, and she believed that defendant Barnett "honored her extreme commitment" to Shaklee Corporation. "When the defendants and each of them threatened her instead of paying her and lied about their motives in not paying her she became terribly agitated, upset, shocked and felt generally ill from the sense of extreme betrayal that occurred before she ever hired a law firm to prosecute her action." *Id.* ¶ 36.

Plaintiff filed suit in San Francisco Superior Court. The complaint alleges three claims: (1)

3

tortious interference with contract, against all defendants; (2) deceitful misappropriation of funds, against all defendants; and (3) tortious maintenance of a sham defense of a case in litigation, against Orrick Herrington, Berry and Edmunson. Defendants timely removed this case, asserting that plaintiff's claims are preempted by and arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants have moved to dismiss plaintiff's state claims as preempted by ERISA, and plaintiff has moved to remand this case to state court.

**DISCUSSION**

"A party seeking removal based on federal question jurisdiction must show either that the state-law causes of action are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction." *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).

A provision of state law may "relate to" an ERISA benefit plan, and may therefore be preempted under § 514(a). *See* 29 U.S.C. § 1144(a) (the relevant provisions of ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)." ). "But a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court." *Marin General Hosp.*, 581 F.2d at 944.

Thus, to the extent defendants argue that removal is proper because plaintiff's claims "relate to" the ERISA pension plans and are thus preempted under Section 514, defendants are incorrect. The Court only has jurisdiction if any of plaintiff's claims are completely preempted under Section 502. If any of plaintiff's claims are completely preempted under Section 502, the Court will exercise supplemental jurisdiction over the other claims and determine whether those claims are subject to conflict preemption under Section 514.

4

In order to determine whether an asserted state-law cause of action comes within the scope of Section 502(a)(1)(B), the Supreme Court has formulated a two-prong test. *See Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). Under *Davila*, a state-law cause of action is completely preempted if (1) "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at 210. § 502(a)(1)(B). Section 502(a)(1)(B) provides:

> A civil action may be brought – (1) by a participant or beneficiary – . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

State law legal duties are not independent of ERISA where "interpretation of the terms of [the] benefit plan forms an essential part" of the claim, and legal liability can exist "only because of [the] administration of ERISA-regulated benefit plans." *Davila*, 542 U.S. at 211.

## I.   Tortious interference with contract

Defendants argue that plaintiff's claim for tortious interference with contract is completely preempted by Section 502(a) because the claim conflicts directly with an ERISA cause of action under ERISA § 502(a) for enforcement of ERISA § 510. *See Ingersoll-Rand*, 498 U.S. at 144 ("Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510"). Section 510 of ERISA provides,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

Defendants argue that plaintiff's claim for tortious interference with a contract conflicts with Section 510 because the "contract" at issue is plaintiff's contract with Shaklee's ERISA pension plans, and the "tortious interference" is defendants' fraudulent recharacterization of plaintiff's 2005 bonus, which plaintiff alleges was done in order to interfere with her attainment of benefits under the plans.

Defendants rely on *Ingersoll-Rand Company v. McClendon*, 498 U.S. 133 (1990), and *Felton v. Unisource Corporation*, 940 F.2d 503 (9th Cir. 1991) In *Ingersoll-Rand*, the plaintiff brought a wrongful discharge action under various state tort and contract theories, alleging that he was terminated

based on his employer's desire to avoid making contributions to his pension fund. The Texas Supreme Court held that although McClendon was an at-will employee, Texas law recognized an exception to the doctrine prohibiting termination if the employee could prove that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund. *Ingersoll-Rand*, 498 U.S. at 136. The Supreme Court reversed, and held that the plaintiff's claims were preempted by ERISA Sections 514, 510 and 502. Relevant here, the Court held that McClendon's claims fell "squarely within the ambit" of Section 510, and that Section 502(a) was the "exclusive remedy for rights guaranteed under ERISA, including those provided by § 510." *Id*. at 143-44. The Court held that the claim was preempted even though the plaintiff did not seek pension benefits, and instead sought lost future wages, mental anguish, and punitive damages as the result of the wrongful discharge. *Id*. at 145.

Similarly, in *Felton v. Unisource Corporation*, 940 F.2d 503 (9th Cir. 1991), the Ninth Circuit affirmed summary judgment for the defendant in a wrongful termination case on ERISA preemption grounds based on the plaintiff's deposition testimony that his wrongful termination claim "arose out of Unisource's desire to avoid medical insurance payments to him." *Id*. at 507. *Felton* was originally filed in state court and alleged two state law claims, and the defendant removed on ERISA preemption grounds. The district court denied the plaintiff's motion for remand, and subsequently granted summary judgment in favor of defendant. The Ninth Circuit affirmed the district court's ERISA preemption analysis. "This court has held that preemption does not occur if the loss of benefits was an incidental result of a wrongful termination. However, when the plaintiff contends that the motivating factor behind her termination was the defendant's attempt to evade payment benefits, preemption is clear." *Id*. at 510 (internal citation and quotation omitted). The court held that Felton could have originally brought his state law claims under ERISA Section 502(a)(1)(B), which provides that plan participants may bring an action to recover benefits due under the terms of a plan, or Section 502(a)(3), which allows participants to bring claims to enjoin any act or practice which violates any provision of ERISA or the terms of a plan, to obtain other appropriate equitable relief, or to enforce ERISA or the terms of a plan. The court held that Felton's claims attempted to redress the same acts prohibited by Section 510 of ERISA.

6

1   Plaintiff argues that the complaint does not and cannot allege a violation of Section 510 because
2 she does not allege that she was subject to an adverse employment action, such as discharge, and she
3 notes that she worked until her retirement in August 2007. However, defendants correctly note that
4 Section 510 claims are not limited to instances involving termination. Section 510 also prohibits
5 "discrimin[ation] against a plan participant . . . for exercising any right to which he is entitled under the
6 provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any
7 right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 2910. Defendants
8 contend that the complaint alleges that defendants retaliated against plaintiff for exercising her legal
9 rights under the Plans by threatening her with litigation and speaking to her in a way that was intended
10 to cause her fear. *See* Compl. ¶ 23 ("After repeatedly annoying Defendant, Roger Barnett, regarding
11 his conduct that resulted in the inability for the plaintiff, Busse, to receive her pension benefits . . . on
12 or about August 2, 2007, Defendant, Marjorie Fine representing the defendant, Roger Barnett, stated
13 in a threatening voice that if the plaintiff attempted to pursue the matter through legal channels, Roger
14 Barnett would vigorously litigate the case, [and] would hire the New York law firm of Kasowitz,
15 Benson and 'will bury you in legal fees.'"); *see also id.* ¶ 33 ("at no time did the defendants ever present
16 any case whatsoever but merely defended by threatening a sham counter suit that would cost the plaintiff
17 a fortune to defend.").

18   Plaintiff asserts that this type of retaliation is not covered by Section 510 because it does not
19 amount to an adverse employment action. Plaintiff does not cite any authority for the proposition that
20 threats of litigation made in retaliation for exercising rights under an ERISA plan do not, as a matter of
21 law, fall under the ambit of Section 510. The Court has been unable to find any on point authority,
22 either within or outside the Ninth Circuit, that answers the question of whether a plaintiff must allege
23 a specific retaliatory adverse employment action in order to bring a claim under Section 510. However,
24 the legislative history and case law interpreting Section 510 persuades the Court that the conduct alleged
25 here – threatening sham litigation and to "bury the plaintiff in legal fees" in direct retaliation for the
26 plaintiff's exercise of her rights under an ERISA plan – is covered by Section 510. "The legislative
27 history [of ERISA] reveals that the prohibitions were aimed primarily at preventing unscrupulous
28 employers from discharging or harassing their employees in order to keep them from obtaining vested

7

pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980); *see also* S. Rep. No. 93-127, 93d Cong., 2d Sess., reprinted at (1974) U.S. Code Cong. & Admin. News ¶. 4838, 4872 ("These provisions [ERISA §§ 510 and 511] were added by the Committee in the face of evidence that in some plans a worker's pension rights or the expectations of those rights were interfered with by the use of economic sanctions or violent reprisals."); *see also Mattei v. Mattei*, 126 F.3d 794, 805 (6th Cir. 1997) ("the anti-retaliation provision of ERISA § 510 . . . is designed . . . to prevent employers to use economic leverage to discourage certain activity by those persons that Congress wanted to protect"); *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993) ("[Section 510] does not broadly forbid all forms of discrimination" in employment benefits, only discrimination "designed to retaliate for the exercise of a right or to interfere with the attainment of an entitled right.").

Plaintiff also argues that Section 510 does not govern her claim because she is claiming a breach or interference with her employment contract, not an interference with her ERISA rights. Plaintiff contends that the contract at issue is Barnett's promise to pay her the performance bonus, rather than a retention bonus. However, as defendants note, plaintiff was actually paid the entire bonus in 2005, and the dispute over whether the bonus was characterized as a "performance" bonus or a "retention" bonus was only relevant as it related to plaintiff's ERISA pension plan. Plaintiff's reliance on *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444 (6th Cir. 2003), is misplaced. In *Marks*, the plaintiff alleged state law claims for breach of contract, fraud and misrepresentation against his employer. The plaintiff alleged his employer, without cause, significantly altered his duties and reduced his compensation. "Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted." *Id*. at 453. The court held that the fraud and misrepresentation claims were preempted to the extent that they alleged that the employer induced the plaintiff not to exercise his rights under an ERISA pension plan. *Id*. However, "to the extent that Marks alleges that fraud or misrepresentation induced him to accept employment as an initial matter, he can state a state-law claim for fraud and/or innocent misrepresentation." *Id*. Here, plaintiff has not alleged a separate employment contract that was violated by virtue of defendants' characterization of the bonus as a "retention" bonus.

The Court finds that the complaint alleges that defendants retaliated against plaintiff for

exercising her rights under the Plans, and thus that Section 510 applies.[1] Accordingly, defendants' removal of this action was proper because plaintiff's claim for tortious interference with contract is completely preempted by ERISA. The Court now must determine whether plaintiff's other claims are preempted under ERISA Section 514, which preempts all claims that "relate to" an employee benefit plan.

## II.     Deceitful misappropriation of funds

Plaintiff's second claim is for deceitful misappropriation of funds, and is alleged against all defendants. Plaintiff alleges that as of February 14, 2007, plaintiff had approximately $148,000 in pension rights that had accrued as a result of the 2005 performance bonus. Compl. ¶ 39. Plaintiff alleges that defendants misappropriated those funds when Berry, acting as Barnett's agent, contacted Prudential Retirement and "falsely represented that inadvertently defendants had mis-classified the plaintiff's 2005 retention bonus as a performance bonus and therefore the Prudential records that allowed the Plaintiff Busse her $150,000 pension bonus had to be removed from Prudential Retirement's pension records so that no pension benefit, whatsoever, emanating from the July 2005 bonus would ever be paid to the Plaintiff, Busse." *Id*. ¶ 40.

Defendants contend that this claim is preempted by ERISA Section 514, which provides, "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or a reference to such a plan.'" *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (quoting *New York State Conference of*

---

[1] For this reason, the Court also rejects plaintiff's argument that the complaint does not allege retaliatory conduct. Plaintiff argues that "[o]f course, Shaklee's recharacterization of the bonus had the consequence of delaying Busse's pension payment, but it was designed to save corporate funds, and not directly to extract any waiver of Busse's benefits." Pl's Motion at 7:17-19. While the complaint alleges that Shaklee recharacterized the bonus in order to save money, the complaint also repeatedly alleges that defendants "engaged in outrageous and oppressive behavior to prevent the plaintiff from receiving her rightfully gained pension benefits flowing from the 2005 performance bonus." Compl. ¶ 16.

9

*Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)). "[T]he focus is whether the claim is premised on the existence of the ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, sufficient 'reference' exists to support preemption." *Providence Health Plan*, 385 F.3d 1172.

The Court concludes that this claim "relates to" an ERISA plan and is therefore preempted under Section 514. The misappropriated funds are plaintiff's ERISA pension funds. This claim is premised on the existence of the ERISA pension plans, and without the plans, there would be no tort of removing plaintiff's pension rights from the pension records.

To the extent plaintiff contends that her claims are not preempted because she has not sued the plans, or because she seeks relief not available under ERISA, those arguments are foreclosed by *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003 (9th Cir. 1998). In *Bast*, the surviving spouse and child of a woman who died of breast cancer sued Prudential after Prudential denied the woman's claim for a medical procedure to treat her cancer. The Ninth Circuit held that the plaintiffs' state law tort and contract claims were preempted by ERISA. The court held that these claims were preempted because they asserted that Prudential improperly processed Rhonda Bast's claim for benefits under an ERISA plan. The court rejected the plaintiffs' argument that the claims were not preempted because they were not suing the plan, but were suing Prudential as an insurance company. "The Basts' claims against Prudential arise out of Prudential's actions as the benefit plan administrator, not as an insurance company or insurance provider." *Id*. at 1008. The court held that if the Basts were to recover, it was only under ERISA.

The court then reviewed the possible ERISA claims and remedies. "ERISA's civil enforcement provision outlines the possible claims by a participant or beneficiary. 29 U.S.C. § 1132, ERISA § 502(a). They include: (1) an action to recover benefits due under the plan, ERISA § 502(a)(1)(B); (2) an action for breach of fiduciary duties, ERISA § 502(a)(2); and (3) a suit to enjoin violations of ERISA or the Plan, or to obtain other equitable relief, ERISA § 502(a)(3). Extracontractual, compensatory and punitive damages are not available under ERISA." *Id*. at 1008-09. The Basts' claims were for loss of Rhonda Bast's chance of survival, out of pocket costs, loss of income, loss of consortium, and emotional distress; these claims all sought extracontractual or compensatory damages which are not recoverable

10

under ERISA. The Ninth Circuit rejected the plaintiffs' arguments that their state claims could not be preempted if there is no remedy under ERISA. "ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy. The focus is on ERISA. If it does not provide a remedy, none exists." *Id*. at 1010.

### III.  Sham defense of a case in litigation

Plaintiff's third claim is the Orrick Herrington defendants tortiously maintained a "sham defense of a case in litigation." Plaintiff alleges that "[a]lthough the FIRM knew, when they insisted in August of 2008 that the plaintiff Busse pursue her ERISA claim in the appeals process, that no defense to Busse's claim existed, defendant FIRM persisted on representing the defendants, SHAKLEE and BARNETT, and carried on an inappropriate sham defense, against California Business and Professions Code Section 6068." Compl. ¶ 54.

The Court concludes that this claim is also preempted by ERISA Section 514 because it relates to the plans. Plaintiff challenges alleged misconduct of the attorneys representing Shaklee in an "ERISA mandated arbitration process" concerning whether "plaintiff was entitled to her pension rights." *Id*. ¶ 48. But for the ERISA pension plan, and plaintiff's administrative appeal regarding her pension rights, there would be no claim against defendants for sham defense. Adjudicating the merits of plaintiff's claim would require interpreting the ERISA plan, and determining whether there was any basis for defense of the administrative appeal. Accordingly, this claim "relates to" an ERISA plan, and is preempted.

### CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for remand and GRANTS defendants' motions to dismiss. (Docket Nos. 9, 11 & 18). The Court GRANTS plaintiff leave to amend the complaint. The amended complaint must be filed by **April 23, 2010**.

**IT IS SO ORDERED.**

Dated: April 6, 2010

SUSAN ILLSTON
United States District Judge

11