IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORA BUSSE, | No. C 10-359 SI |
|     Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION TO DISMISS AND DENYING** |
| SHAKLEE CORPORATION, *et al.*, | **PLAINTIFF'S MOTION TO REMAND** |
|     Defendants. | |

On July 9, 2010, the Court held a hearing on plaintiff's motion for remand and defendants' motion to dismiss the amended complaint. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss without leave to amend and DENIES plaintiff's motion for remand.

**BACKGROUND**

On December 22, 2009, plaintiff Debora Busse filed a complaint against her former employer, the Shaklee Corporation, as well as Shaklee's CEO Roger Barnett, the in-house counsel for Shaklee, Marjorie Fine, the outside attorneys for Shaklee at Orrick, Herrington & Sutcliffe LLP, William Berry and D. Barclay Edmundson, and the Orrick Herrington law firm. Plaintiff alleged that a "performance bonus" that she was paid in 2005 had been reclassified by defendants in 2007 as a "retention bonus" for the purpose of denying her additional pension benefits under two employee benefits plans, the Shaklee Corporation Pension Plan and the Shaklee Corporation Excess Plan. Both plans are "employee pension benefit plans" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2).

The complaint alleged that plaintiff complained about the recharacterization of the bonus, and ultimately challenged the recharacterization in an administrative appeal filed under ERISA. The complaint alleged, *inter alia*, that Fine threatened plaintiff that if she attempted to pursue the matter through legal channels, that Barnett would "bury [her] in legal fees," and that during the appeals process, defendants "threatened a scam counter lawsuit of their own claiming that the plaintiff was giving financial advice . . . ." Compl. ¶¶ 23, 32-22. On July 23, 2009, the Appeals Committee upheld plaintiff's claim that the bonus was a "performance" bonus, and plaintiff received the pension benefits she was due.

Plaintiff then filed this lawsuit in San Francisco Superior Court. The original complaint alleged three claims: (1) tortious interference with contract, against all defendants; (2) deceitful misappropriation of funds, against all defendants; and (3) tortious maintenance of a sham defense of a case in litigation, against Orrick Herrington, Berry and Edmunson. Plaintiff sought damages for, *inter alia*, the attorneys' fees and costs that she incurred during the administrative appeal, and emotional distress and mental suffering. Defendants timely removed this case, asserting that plaintiff's claims were preempted by and arise under ERISA. Defendants moved to dismiss plaintiff's claims as preempted, and plaintiff moved to remand.

In an order filed April 6, 2010, the Court granted defendants' motion to dismiss and denied plaintiff's motion for remand. The Court held that plaintiff's claim for tortious interference with contract was completely preempted by Section 510 of ERISA, which prohibits, *inter alia*, "discriminat[ion] against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. The Court held that the tortious interference claim was completely preempted by Section 510 because the complaint alleged that plaintiff exercised her rights to which she was entitled under the Shaklee pension benefit plans, and that defendants retaliated against her for exercising those rights by threatening sham litigation against plaintiff and to "bury the plaintiff in legal fees." The Court held that the claims for deceitful misappropriation of funds and sham defense of a case in litigation were preempted by Section 514 of

ERISA because they "related to" an ERISA plan.[1]

Plaintiff filed a first amended complaint ("FAC") on April 23, 2010. Although plaintiff still challenges the reclassification of the 2005 "performance bonus" as a "retention bonus," the FAC differs from the original complaint in several ways. The FAC is only alleged against Shaklee Corporation and Shaklee CEO Roger Barnett. The FAC omits the three claims alleged in the original complaint, and alleges four new claims: (1) breach of contract, (2) bad faith, (3) intentional misrepresentation by making of promises without intent to perform, and (4) intentional infliction of emotional distress.

The FAC alleges that plaintiff and defendants "entered into an employment contract on or about July 1, 2005, providing that Plaintiff would be paid a performance bonus that would result in an enhanced pension benefit upon her retirement. That contract was oral, written and implied-in-fact." FAC ¶ 18. All four claims incorporate this allegation of an employment contract, and plaintiff alleges that the employment contract imposed an independent duty to pay a performance bonus separate from any duties imposed by ERISA. The FAC alleges that defendants reclassified the bonus as a "retention bonus" because "[d]efendants knew that such a 'retention bonus' was excluded from earnings entitled to pension credit, and that by re-classifying the bonus, Defendant Shaklee would not have to fund the enhanced pension benefits which a performance bonus would entail." *Id.* ¶ 12. The FAC also deletes the prior allegations about misconduct during the administrative appeal process, and alleges that following plaintiff's complaint to Barnett about the reclassification of her bonus, "[d]efendants took no action to adversely affect the terms and conditions of Plaintiff's employment at Shaklee." *Id.* ¶ 14. The FAC still alleges, as did the original complaint, that the day before plaintiff retired, Shaklee's general counsel Fine told her that if plaintiff pursued litigation to enforce her claim to a performance bonus that defendants would "bury her" in legal fees. *Id.*

The FAC seeks damages for "substantial losses in earnings and other employee benefits." *Id.* ¶ 37. The FAC does not explain what "earnings" plaintiff is seeking. However, at the hearing on this matter, plaintiff's counsel clarified that plaintiff is not actually seeking damages for lost "earnings," but

---

[1] As discussed in the April 6, 2010 order, the Court held that because the tortious interference with contract claim was completely preempted, that claim provided a basis for federal question jurisdiction. The remaining claims in the original complaint were subject to conflict preemption under Section 514.

3

1 that she is seeking monetary damages for the expenses she incurred in challenging the reclassification
2 of the bonus, and other damages associated with the reclassification. Plaintiff is also seeking emotional
3 distress damages as a result of the suffering and anguish she experienced because of the reclassification
4 of the bonus. *Id*. ¶ 39.

Defendants have moved to dismiss the FAC on the ground that the new claims are preempted by ERISA, and plaintiff has moved to remand.

**DISCUSSION**

"A party seeking removal based on federal question jurisdiction must show either that the state-law causes of action are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction." *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). "If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Marin General Hosp.*, 581 F.3d at 945 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

A state law claim may also "relate to" an ERISA benefit plan, and may therefore be preempted under Section 514(a). *See* 29 U.S.C. § 1144(a) (the relevant provisions of ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)."). "But a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court." *Marin General Hosp.*, 581 F.2d at 944. The Court only has jurisdiction if one or more of plaintiff's claims are completely preempted under Section 502(a).

Defendants contend that plaintiff's claims are completely preempted by Section 502(a) because

the claims are wholly encompassed by an ERISA cause of action under ERISA § 502(a)(3)[2] for enforcement of ERISA § 510. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) ("Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510."). Section 510 of ERISA provides,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140. The "purpose of section 510 is to 'prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan.'" *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)).

Defendants argue that all of plaintiff's claims are preempted by Section 510 because plaintiff's fundamental claim is that defendants discriminated against her for the purpose of interfering with her benefits under the ERISA plans. Defendants argue that although the FAC does not use the word "discriminate," each of plaintiff's claims alleges that defendants took some action against plaintiff – reclassifying the bonus as a "retention bonus" – for the purpose of depriving her of ERISA pension benefits.

Plaintiff contends that her claims do not arise under Section 510 because the FAC does not allege that the recharacterization of the bonus was an adverse employment action. Plaintiff argues that "Shaklee did nothing other than re-characterize a bonus that had already been paid. It did nothing to affect the terms and conditions of her employment, and thus committed no adverse employment action." Opposition at 10:11-14. Plaintiff emphasizes the fact that she remained employed in the same position

---

[2] Section 502(a)(3) of ERISA provides, "Persons empowered to bring a civil action. A civil action may be brought – . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Courts have held that Section 510 claims are brought pursuant to ERISA Section 502(a)(3), and not 502(a)(1)(B). *See Eichorn v. AT&T Corp.*, 484 F.3d 644, 653 (7th Cir. 2007) (discussing cases); *see also Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) (quoting § 502(a)(3) as the enforcement mechanism for rights under § 510).

5

until she retired in August 2007, and that she was paid the full amount of the bonus in 2005. Plaintiff argues that the reclassification of her bonus on its own does not constitute a Section 510 violation, and that "[w]hile it had the consequence of reducing the amount of Busse's pension, allowing such a claim would convert virtually any wage dispute over the amount or type of an employee's compensation into an ERISA claim." *Id*. at 10:17-20.

The Court agrees with defendants that plaintiff's claims arise under Section 510 because the gravamen of the complaint is that defendants reclassified her bonus "for the purpose of interfering with the attainment of any right to which [plaintiff] may become entitled under the [Shaklee ERISA pension plans]." The FAC alleges that plaintiff was paid a "performance bonus" in 2005, that as a result of the "performance bonus" she was entitled to "enhanced pension benefits," that in 2007 defendants "took steps to alter Defendants' payroll records in order to reclassify Plaintiff's bonus as a 'retention bonus,'" and that "Defendants knew that such a 'retention bonus' was excluded from earnings entitled to pension credit, and that by re-classifying the bonus, Defendant Shaklee would not have to fund the enhanced pension benefits which a performance bonus would entail." FAC ¶¶ 10, 12. Unlike cases where the loss of benefits is not a motivating factor behind the adverse employment action, here the *only* consequence of the reclassification of plaintiff's bonus was to deprive plaintiff of ERISA pension benefits. *Compare Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1405 (9th Cir. 1988) (no preemption where plaintiff alleged he was terminated in retaliation for union activities, and loss of benefits was a consequence of the tortious discharge), *with Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992) (wrongful termination claim preempted because plaintiff's sole theory was that employer terminated him to deny medical insurance after his son was born with disability). The FAC does not allege any other motivation for the reclassification of plaintiff's bonus, and it is clear from both the FAC and the original complaint that the only alleged motivation for reclassifying plaintiff's bonus was to deprive her of ERISA pension benefits.

Contrary to plaintiff's characterization of the FAC, each of her claims alleges that defendants took an adverse action for the purpose of interfering with her ERISA pension benefits. The breach of contract claim alleges that defendants breached their employment agreement with her in 2007 by reclassifying her performance bonus, and that the effect was to interfere with her anticipated pension

6

benefits under the Shaklee plans. FAC ¶¶ 18-20. The bad faith claim alleges that defendants acted in bad faith by "interfering with Plaintiff in the performance of her job duties" by "denying the employment agreement" and by "intentionally misrepresenting the terms and conditions of her employment." *Id.* ¶¶ 23-24. In other words, plaintiff alleges that defendants engaged in bad faith by interfering with her job duties by reclassifying her bonus in order to deny her pension benefits. The third claim for "intentional misrepresentation by making promises without intent to perform" alleges that defendants "promised Plaintiff Busse that she would be paid a performance bonus that would result in enhanced pension benefits upon her retirement," that at the time defendants made these promises they did not intend to perform them, and that plaintiff did not discover the intentional misrepresentations until 2007 when defendants "announced their intention to disclaim the promised performance bonus, and to refuse to fund it." *Id.* ¶¶ 27, 28, 31. Again, plaintiff's claim essentially alleges that defendants disclaimed their obligations regarding her performance bonus and reclassified the bonus in order to avoid paying pension benefits. Finally, plaintiff's claim for intentional infliction of emotional distress alleges that "Defendants' disclaimer of the promised performance bonus and refusal to fund it, despite Plaintiff's long and exemplary service to Shaklee, was outrageous in that Plaintiff had continued to work for Shaklee in reliance on the promised performance bonus to support her after retirement . . . ." *Id.* ¶ 34. The "refusal to fund" the performance bonus is the reclassification of the bonus as a "retention bonus" in order to avoid paying pension benefits due under plaintiff's ERISA plans.

To the extent that plaintiff contends that some additional adverse employment action is required in order to make out a claim under the "discrimination" prong of Section 510, the Court disagrees. Section 510 prohibits "persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits . . . ." *Lessard*, 307 F.3d at 1024 (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)). Here, the FAC alleges that defendants took actions – disclaiming the 2005 "employment agreement" and reclassifying plaintiff's "performance bonus" as a "retention bonus" – with the purpose of cutting off and interfering with plaintiff's right to collect future pension benefits.

The Court concludes that plaintiff's claims arise under Section 510 because the FAC alleges that defendants discriminated against her for the purpose of interfering with her ERISA pension benefits.

7

The Court therefore finds it unnecessary to reach the parties' arguments about whether the FAC also alleges a violation of the anti-retaliation prong of Section 510. The Court previously found that the original complaint alleged a violation of the anti-retaliation prong of Section 510 because the complaint alleged, *inter alia*, that defendants threatened to bring a sham countersuit against plaintiff during the course of the ERISA administrative appeal. The FAC omits those allegations. Similarly, the Court does not address the parties' arguments about whether plaintiff's claims are completely preempted by Section 502(a)(1)(B) of ERISA, or whether any of the claims are subject to conflict preemption under Section 514.

The Court also concludes that further leave to amend would be futile because plaintiff cannot allege any state law claims that would not be preempted under ERISA, and the relief plaintiff seeks in this lawsuit is not available under ERISA. *See Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1009 (9th Cir. 1998) ("Extracontractual, compensatory and punitive damages are not available under ERISA.").

The Court finds it regrettable that because plaintiff's claims are preempted, she is left without a remedy. Defendants' actions were clearly designed to deprive plaintiff of ERISA pension benefits to which she would otherwise have been entitled. However, as the Ninth Circuit has recognized, "[a]lthough forcing the [plaintiffs] to assert their claims only under ERISA may leave them without a viable remedy, this is an unfortunate consequence of the compromise Congress made in drafting ERISA." *Id*.

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion for remand and GRANTS defendants' motion to dismiss without leave to amend. (Docket Nos. 29 & 33).

**IT IS SO ORDERED.**

Dated: July 9, 2010

SUSAN ILLSTON
United States District Judge